**FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)**

**Form 12 (p. 1)**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

**Case Number:** 2023-1265

**Short Case Caption:** Stein v. Gill

**Name of Appellant:** Kathlyn Stein

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the trial court's opinion, order, and/or judgment. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

1.  Have you ever had another case before this court? ☐ Yes ☑ No
    If yes, state the name and number of each case.

2.  Did the trial court incorrectly decide or fail to take into account any facts?
    ☑ Yes ☐ No

**Please see Attachment B:** The trial court incorrectly failed to "accept as true" the unrepresented Appellant's EPA/FLSA wage discrimination facts/inferences that "state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 556, 570); or to recognize that her "claim has facial plausibility… that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The trial court similarly failed to "construe[s] the [unrepresented litigant's] complaint [facts] liberally, grant[ing] plaintiff[ ] the benefit of all inferences that can [reasonably] be derived from the facts alleged." *Sickle v. Torres Advanced Enterprise Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**Please see Attachment C:** Appellant provides District Court's July 1, 2022, Order on dismissal, i.e., the "the trial court's opinion, order, and/or judgment" at issue here as required.

3.  Did the trial court apply the wrong law?    ☑ Yes    ☐ No

**1.    The District of Massachusetts erred in granting Defendants a 12(b)(1) Dismissal on the grounds that the Court of Federal Claims has exclusive jurisdiction over Equal Pay Act claims:** In *United States v. Bormes*, 568 U.S, 6 (2012), the Supreme Court held that the Tucker Act, which requires claims seeking monetary relief against the federal government be initiated and maintained solely in the Court of Federal Claims, is displaced by federal statutes which contain their own remedial scheme. The District Court mistakenly determined, and the First Circuit erroneously concurred, that the Equal Pay Act does not contain a remedial scheme that displaces the Tucker Act – even though the Equal Pay Act provides that a claimant can seek relief in any federal or state court of competent jurisdiction – and thus incorrectly concluded this case had to be dismissed under Federal Rule of Civil Procedure 12(b)(1). This was error under Bormes. The Court should have instead found that jurisdiction was proper in the District of Massachusetts and not dismissed the case. Appellant's **Attachment A, which is an August 31, 2021 brief filed by the United States in Case No. 20-1906 provides further arguments on this error of law.**

**2.    The District of Massachusetts erred in dismissing Appellant's Complaint under Federal Rules of Civil Procedure 12(b)(6) (Attachment B):**

**a.    Appellant Did State A Claim Entitling Her To Relief, Especially Given Her Pro Status**: The District Court's opinion contained virtually no analysis of Appellant's claims, merely stating in one sentence that it did not contain sufficient allegations about the director or similarly situated employees. It was error for the Court to so find, as Plaintiff did raise sufficient allegations, especially given her pro se status. *Sickle v. Torres Advanced Enterprise Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Further, the Court did not "accept as true" her well-pleaded allegations, nor did it "draw all reasonable inferences in her favor" as is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**b.    If This Court Upholds the 12(b)(1) dismissal, it must overturn the 12(b)(6) dismissal**: If this Court determines that the 12(b)(1) dismissal was proper, then the District of Massachusetts did not have subject matter jurisdiction over Appellant's claims and thus could not have granted a 12(b)(6) dismissal, which is a decision on the substance of the complaint. Therefore, if this Court upholds the 12(b)(1) dismissal, it necessarily must overturn the 12(b)(6) dismissal.

**c.    Alternatively, this Court should hold that the 12(b)(6) dismissal was without prejudice**: While Appellant contends she has pled sufficient allegations to survive a motion to dismiss for failure to state a claim, especially given her pro se status, if this Court does choose to uphold the District Court's barebones decision to dismiss her complaint under Federal Rules of Civil Procedure 12(b)(6), it should hold the dismissal was without prejudice, as plaintiff has never amended her complaint and thus should be given leave to do so to cure any alleged deficiencies.

4.  Did the trial court fail to consider important grounds for relief?

☑ Yes      ☐ No

If yes, what grounds?

> Besides what was stated above, the trial court failed to consider important
> grounds for relief under Fed. R. Civ. Proc. 59(e) and/or 60(b) and/or 15(a)(2).

5.  Are there other reasons why the trial court's decision was wrong?

☐ No          ☑

If yes, what reasons?

6.  What action do you want this court to take in this case?

> The Appellant requests the Federal Circuit reverse the District of Massachusetts
> District Court's erroneous dismissal of her complaint pursuant to Federal Rules of
> Civil Procedure 12(b)(1), and remand her complaint back to District of
> Massachusetts for further proceedings. If the Court finds the 12(b)(1) dismissal
> proper, Plaintiff requests it vacate the order dismissing her complaint on 12(b)(6)
> grounds as the District Court would not have had subject matter jurisdiction to
> issue such a ruling.
>
> Appellant also requests that the 12(b)(6) dismissal the District Court issued in
> the alternative be reversed such that her complaint is reinstated. Alternatively,
> Appellant requests an order from this Court that such dismissal was without
> prejudice, giving her leave to file a new, amended complaint that cures any
> alleged deficiencies. This is especially warranted in light of her pro se status and
> the fact that she has not amended her complaint previously.
>
> Should the Federal Circuit find that District Court's jurisdictional conclusions
> were correct, the Appellant asks the Court to please stay the transfer of her case
> to the Federal Court of Claims under § 1631 instead of dismissing, so that the
> Appellant may appeal the Federal Circuit's decision to the United States Supreme
> Court.

Date: <u>January 9, 2022</u>            Signature:     <u>/s/  Kathlyn M. Stein</u>

Name:     <u>Kathlyn M. Stein, pro se</u>

No. 20-1906

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

KATHLYN STEIN,

Plaintiff-Appellant,

v.

JOHN COLLINS, Retired Director, VA Central Western MA Health Care System, in his individual capacity; DUANE B. GILL, Acting Director, VA Central Western MA Health Care System, in his official capacity,

Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

## APPELLEES' RESPONSE TO APPELLANT'S
## PETITION FOR REHEARING EN BANC

---

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

MICHAEL S. RAAB
WEILI J. SHAW
  *(202) 514-1371*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7240*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................1

STATEMENT ............................................................................................2

ARGUMENT............................................................................................5

I.    Jurisdiction over FLSA Claims Against the Government Lies Only in
      Federal District Court ........................................................................5

      A.    *United States v. Bormes* Established that Tucker Act
            Jurisdiction Does Not Apply when a Statute Supplies Its Own
            Remedial Scheme...................................................................5

      B.    The FLSA's Remedial Scheme Displaces Tucker Act
            Jurisdiction Under *Bormes*....................................................7

II.   The District Court Had Federal-Question Jurisdiction Even if the
      Tucker Act Also Applies to the Same Claims ................................12

      A.    District Courts Have Federal-Question Jurisdiction over FLSA
            Claims Against the Government Without Regard to the Amount
            in Controversy....................................................................12

      B.    Even if Tucker Act Jurisdiction Also Applies to FLSA Claims,
            that Jurisdiction Is Not Exclusive........................................13

CONCLUSION ......................................................................................17

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Abbey v. United States*,
    745 F.3d 1363 (Fed. Cir. 2014) ....................................................4, 5, 8, 9, 11, 12

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ............................................................................14

*Breuer v. Jim's Concrete of Brevard, Inc.*,
    538 U.S. 691 (2003) ............................................................................10

*C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*,
    903 F.2d 114 (2d Cir. 1990).................................................................15

*Ferguson v. Union Nat'l Bank of Clarksburg*,
    126 F.2d 753 (4th Cir. 1942) ..............................................................14

*Graham v. Henegar*,
    640 F.2d 732 (5th Cir. Unit A Mar. 1981)...........................................13

*Jentoft v. United States*,
    450 F.3d 1342 (Fed. Cir. 2006)............................................................11

*Lightfoot v. Cendant Mortg. Corp.*,
    137 S. Ct. 553 (2017) ....................................................................10, 13

*Maine Cmty. Health Options v. United States*,
    140 S. Ct. 1308 (2020) ..........................................................................8

*Merrell Dow Pharms. Inc. v. Thompson*,
    478 U.S. 804 (1986) ............................................................................16

*Mims v. Arrow Fin. Servs.*,
    565 U.S. 368 (2012) ............................................................................16

*Parker v. King*,
    935 F.2d 1174 (11th Cir. 1991) ..........................................................16

*United States v. Bormes*,
    568 U.S. 6 (2012) .......................................................1, 5, 6, 7, 8, 9, 10, 14, 15

*Van Drasek v. Lehman*,
    762 F.2d 1065 (D.C. Cir. 1985) ...........................................................14

*Wyodak Res. Dev. Corp. v. United States*,
    637 F.3d 1127 (10th Cir. 2011)...........................................................15

**Statutes:**

Equal Pay Act:
    29 U.S.C. § 206(d) *et seq.* ...........................................................3

Fair Credit Reporting Act:
    15 U.S.C. § 1681 *et seq.*...........................................................6
    15 U.S.C. § 1681n(a)(3)...........................................................10
    15 U.S.C. § 1681p...........................................................6

Fair Labor Standards Act:
    29 U.S.C. § 201 *et seq.*...........................................................3
    29 U.S.C. § 203(x) ...........................................................10
    29 U.S.C. § 216(b) ...........................................................5, 6, 8, 9, 10, 11, 13
    29 U.S.C. § 255(a) ...........................................................8

28 U.S.C. § 1331...........................................................1, 10, 12, 13, 15, 16

28 U.S.C. § 1346(a)(2)...........................................................6

28 U.S.C. § 1491(a)(1)...........................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

In the view of the United States, the district court had subject-matter jurisdiction over plaintiff's claim against the government under the Equal Pay Act, which is codified as part of the Fair Labor Standards Act (FLSA). The government previously argued before the district court and the panel that the Court of Federal Claims had exclusive jurisdiction under the Tucker Act, but the government no longer advances that view.

In *United States v. Bormes*, 568 U.S. 6 (2012), the Supreme Court held that when a statute imposing liability on the government contains its own remedial scheme, that scheme displaces a Tucker Act remedy.[1] The FLSA creates such a scheme and therefore precludes reliance on the Tucker Act. Jurisdiction over FLSA claims against the government therefore lies only in federal district court.

However, this Court need only decide the easier question of whether the district court had jurisdiction at all, not whether that jurisdiction is exclusive. Because the FLSA waives sovereign immunity, 28 U.S.C. § 1331 gives district courts federal-question jurisdiction over FLSA claims against the government regardless of whether Tucker Act jurisdiction also exists. Although some courts have presumed that Tucker Act jurisdiction—if it exists—must be exclusive,

---

[1] For brevity, this brief uses the "Tucker Act" as shorthand to refer to both the Tucker Act and the Little Tucker Act.

nothing in either the Tucker Act or the FLSA supports that conclusion. That conclusion is also inconsistent with the Supreme Court's admonitions that the Tucker Act serves a gap-filling role and that federal-question jurisdiction is not easily displaced.

The views presented in this brief represent the position of the United States after consultation with the relevant government components. These views are consistent with the government's arguments in the pending Federal Circuit appeal in *Metzinger v. Department of Veterans Affairs*, No. 20-1906 (Fed. Cir. argued June 10, 2021). Regrettably, however, the government previously took a different position in this case, and the district court and this Court may have relied on those arguments. The government now respectfully requests that the Court hold that federal district courts have subject-matter jurisdiction to hear FLSA claims against the government, without regard to the amount in controversy, and remand for further proceedings on plaintiff's official-capacity Equal Pay Act claim.

## STATEMENT

Plaintiff Kathlyn Stein is a physician's assistant in the Department of Veterans Affairs (VA) in its Central Western Massachusetts Healthcare System. Dkt. No. 1, ¶ 6. Plaintiff filed suit in 2018 against John Collins, then the Director of that health system, in his official and individual capacities. *Id.* ¶¶ 1, 7. Plaintiff alleged that, from 2016 through 2018, the VA paid two male nurse practitioners

more than her even though they performed jobs of equal skill, effort, and responsibility under similar working conditions. *Id.* ¶¶ 1, 7, 10-15. Plaintiff alleges that this conduct violated the federal Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*—which is codified as part of the FLSA, *id.* § 201 *et seq.*—and state law. Dkt. No. 1, ¶¶ 26-30.

The government moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. Dkt. No. 23, at 1. As relevant here, the government argued that the Court of Federal Claims has exclusive jurisdiction under the Tucker Act to hear FLSA claims against the government that exceed $10,000. *Id.* at 2-6. Among other points, the government also argued that plaintiff's conclusory allegation that two male nurses were paid more than her "for performing a job of equal skill, effort and responsibility under similar working conditions" was insufficient to survive a motion to dismiss. *Id.* at 11-12 (quotation marks omitted).

The district court dismissed the complaint. Dkt. No. 56, at 10. The court held that it lacked jurisdiction over plaintiff's official-capacity Equal Pay Act claim, agreeing with the government's argument that the Court of Federal Claims has exclusive jurisdiction over FLSA claims against the government that exceed $10,000. *Id.* at 5-7. The court dismissed plaintiff's individual-capacity Equal Pay Act claim without prejudice for failure to state a claim, *id.* at 7-10, and the state

law claims with prejudice based on the federal government's immunity to suit
under state law, *id.* at 7, 10.  The court granted plaintiff leave to request a transfer
to the Court of Federal Claims, *id.* at 10, but plaintiff declined to do so.

After judgment, plaintiff filed motions to alter or amend the judgment and to
amend her complaint.  *See* Dkt. Nos. 36, 37, 38.  The district court granted the
motion to amend the judgment in part, explaining that the court had "relied
heavily" on the Federal Circuit's decision in *Abbey v. United States*, 745 F.3d 1363
(Fed. Cir. 2014), "but incorrectly identified it as a decision of the First Circuit that
is binding on this court."  Dkt. No. 57, at 3.  The court explained that "this error
does not undermine . . . the court's ultimate conclusion that it lacks subject matter
jurisdiction," *id.*, and issued a corrected opinion, Dkt. No 56.  The court otherwise
denied plaintiff's post-judgment motions.  Dkt. No. 57, at 6.  The court again
offered plaintiff an opportunity to request a transfer to the Court of Federal Claims,
*id.*, but plaintiff declined to do so.

Plaintiff appealed to this Court.  As relevant here, plaintiff argued that the
district court erred in concluding that it lacked subject-matter jurisdiction over her
official-capacity Equal Pay Act claim.  *See* Appellant's Br. 8-15.  The government
argued that the district court's conclusion was correct.  *See* Appellees' Br. 11-24.

This Court summarily affirmed the district court's judgment.  Judgment 2.
The per curiam opinion explained that, "[a]fter careful review of the arguments

[plaintiff] raises in her opening brief, we discern no availing challenge to the district court's rulings." Judgment 1.

## ARGUMENT

### I. JURISDICTION OVER FLSA CLAIMS AGAINST THE GOVERNMENT LIES ONLY IN FEDERAL DISTRICT COURT

The Supreme Court held in *United States v. Bormes*, 568 U.S. 6 (2012), that when a statute imposing liability on the government establishes its own remedial scheme, that statute displaces a Tucker Act remedy. That principle applies to the FLSA, which creates a detailed remedial scheme that enables plaintiffs to recover against the government without resort to the Tucker Act. As a result, jurisdiction to hear FLSA claims against the government lies only in federal district court.

### A. *United States v. Bormes* Established that Tucker Act Jurisdiction Does Not Apply when a Statute Supplies Its Own Remedial Scheme

The FLSA provides that a plaintiff may bring an action "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). Before *Bormes*, the courts and the government generally agreed that, under this provision, the Tucker Act and the Little Tucker Act provided the sole bases for jurisdiction in FLSA suits against the government. *See, e.g.*, *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014) (citing cases). As relevant here, the Tucker Act provides that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United

States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Little Tucker Act provides that district courts "shall have original jurisdiction, concurrent with the United States Court of Federal Claims," over the same types of claims when the amount in controversy does not exceed $10,000. *Id.* § 1346(a)(2). Thus, pre-*Bormes* practice treated federal district courts as a "court of competent jurisdiction" to hear FLSA claims against the government only if the claims did not exceed the $10,000 threshold for Little Tucker Act jurisdiction.

*Bormes* established, however, that the Tucker Act does not apply to statutes that establish their own remedial scheme. The Supreme Court held that the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*—which provides that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction," *id.* § 1681p— precluded a Tucker Act remedy. The Court began by reviewing the Tucker Act's purpose. Prior to the creation of the Court of Claims, "it was not uncommon for statutes to impose monetary obligations on the United States without specifying a means of judicial enforcement"; claimants therefore often had to resort to private bills from Congress. *Bormes*, 568 U.S. at 11. "The Tucker Act's jurisdictional grant, and accompanying immunity waiver, supplied the missing ingredient for an

9

action against the United States for the breach of monetary obligations not otherwise judicially enforceable." *Id.* at 12.

The Tucker Act and its "gap-filling role" are "displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies," in which case "the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute." *Bormes*, 568 U.S. at 12-13. The Court explained that "'the general laws which govern the Court of Claims may be resorted to for relief' only" when "'[n]o special remedy has been provided' to enforce a payment to which the claimant was entitled." *Id.* at 13 (alteration in original). Thus, "[w]here the 'liability is one created by statute,' the 'special remedy provided by the same statute is exclusive.'" *Id.*

Examining the FCRA, the Court found that its remedial provisions demonstrate that it "creates a detailed remedial scheme" that "enables claimants to pursue in court the monetary relief contemplated by the statute" "[w]ithout resort to the Tucker Act." *Bormes*, 568 U.S. at 15. The Court therefore applied the principle that "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *Id.* at 13.

## B.     The FLSA's Remedial Scheme Displaces Tucker Act Jurisdiction Under *Bormes*

The Supreme Court's analysis in *Bormes* applies straightforwardly to the FLSA. Because the FLSA is a "law assertedly imposing monetary liability on the

United States [that] contains its own judicial remedies," it displaces the Tucker
Act. *Bormes*, 568 U.S. at 12. Like the FCRA, the FLSA "creates a detailed
remedial scheme" that permits plaintiffs to recover money damages "[w]ithout
resort to the Tucker Act." *Id.* at 15. The FLSA, like the FCRA, provides a cause
of action, limits who may be a plaintiff and a defendant, and specifies the measure
of damages. 29 U.S.C. § 216(b). Like the FCRA, the FLSA defines its own
limitations period: two years, or three years if the violation is willful. *Id.* § 255(a).
Both statutes also provide for the payment of attorney fees. 15 U.S.C.
§ 1681n(a)(3); 29 U.S.C. § 216(b). The FLSA is therefore the type of "self-
executing remedial scheme" that precludes reliance on the "gap-filling role" of the
Tucker Act. *Bormes*, 568 U.S. at 11, 13; *see also Maine Cmty. Health Options v.
United States*, 140 S. Ct. 1308, 1328 (2020).

The district court's contrary conclusion rested principally on the Federal
Circuit's erroneous opinion in *Abbey*, 745 F.3d at 1372. *Abbey* turned in large part
on the Federal Circuit's view that it had no reason to "infer that application of the
Tucker Act would override choices about suing the government embodied in the
remedial scheme of the" FLSA, which in that court's opinion "[took] this FLSA
case outside the reach of the *Bormes* principle." 745 F.3d at 1370. The court
reasoned that the FLSA plainly waives the government's immunity to suit, unlike
*Bormes*, where the Supreme Court left that question open. *Id.* The court also

observed that the FLSA "does not specify a forum that is contrary to that specified by the Tucker Act." *Id.*

That analysis misconstrues *Bormes*, whose holding—that "the metes and bounds of the liability Congress intended to create can only be divined from the text of the statute itself"—did not turn on whether the FCRA and the Tucker Act conflicted in any particular respect. *Bormes*, 568 U.S. at 14. To the contrary, the Court expressly stated that "[w]e . . . need not resolve the parties' disagreement about whether certain inconsistencies between the Little Tucker Act and FCRA can be reconciled"—for example, the existence of an amount-in-controversy requirement and the limitations period. *Id.* at 14 n.5. The Court's response was clear: "Reconcilable or not, FCRA governs." *Id.* It is therefore irrelevant whether any part of the Tucker Act conflicts with the FLSA's remedial scheme; *Bormes* teaches that courts must look to the FLSA alone to determine the "metes and bounds" of the government's liability.

*Abbey* also reasoned that "the fairest reading of section 216(b)," 745 F.3d at 1370—which authorizes suit in "any Federal or State court of competent jurisdiction," 29 U.S.C. § 216(b)—"is that it affirmatively invokes the forum specification for those damages suits found outside the four corners of the FLSA," and that "[t]he Tucker Act is the only available specification that has been identified," *Abbey*, 745 F.3d at 1370. That analysis is mistaken.

The Supreme Court "has understood the phrase 'court of competent jurisdiction' as a reference to a court with an existing source of subject-matter jurisdiction." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 561 (2017). Thus, section 216(b) designates the proper forum as any court with an applicable jurisdictional grant; the most obvious of these grants is federal-question jurisdiction under 28 U.S.C. § 1331. Standing alone, section 1331 would be insufficient to permit suit in district court because "[s]overeign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" *Bormes*, 568 U.S. at 9-10 (quotation marks omitted). The FLSA provides that consent by authorizing suits against a "public agency," 29 U.S.C. § 216(b), which is defined to include "the Government of the United States," *id.* § 203(x). Once sovereign immunity is waived, FLSA suits against the government are plainly "civil actions arising under the Constitution, laws, or treaties of the United States" within the scope of section 1331. Indeed, the Supreme Court has recognized that federal district courts "have original jurisdiction over FLSA claims under 28 U.S.C. § 1331" in other contexts. *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 694 (2003). Plaintiffs may therefore pursue claims against the government under the FLSA's remedial scheme "[w]ithout resort to the Tucker Act." *Bormes*, 568 U.S. at 15.

*Abbey* further reasoned that "it is natural to read [section 216(b)] as implicitly specifying a forum (the Tucker Act forum) in order to complete the waiver of sovereign immunity, given the background principle that waivers of sovereign immunity are generally tied to particular courts." 745 F.3d at 1370. But *Abbey* cites no evidence that Congress implicitly designed the Court of Federal Claims as the proper forum for claims against the government. Nothing in the statute refers even indirectly to either that court or the Tucker Act. To the extent Congress considered the issue, it is far more likely that Congress contemplated district-court jurisdiction. As noted, district courts have federal-question jurisdiction over FLSA claims against private and state-government defendants. Moreover, the Federal Circuit has recognized that even some FLSA claims against the federal government must be filed in district court. That court has held that FLSA actions against the government alleging retaliation, 29 U.S.C. § 216(b), sound in tort and therefore preclude a Tucker Act remedy. *See Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed. Cir. 2006). District courts are therefore the federal "court[s] of competent jurisdiction" in most circumstances, including for some claims against the federal government. Nothing in the FLSA suggests that Congress intended the same phrase to require resort to the Court of Federal Claims for other claims against the federal government.

## II.  THE DISTRICT COURT HAD FEDERAL-QUESTION JURISDICTION EVEN IF THE TUCKER ACT ALSO APPLIES TO THE SAME CLAIMS

For the reasons above, the position of the United States is that jurisdiction to hear FLSA claims against the government lies only in federal district court. However, if this Court grants further review, the Court need not fully accept or reject that position; this case concerns only whether the district court had jurisdiction at all, not whether that jurisdiction is exclusive. The Court can therefore resolve this case by holding that the district court possessed jurisdiction, without deciding whether *Bormes* also precludes jurisdiction in the Court of Federal Claims. Moreover, such a holding would create no conflict with *Abbey*, which held only that the Court of Federal Claims may exercise jurisdiction, not that such jurisdiction is exclusive. 745 F.3d at 1369.

### A.  District Courts Have Federal-Question Jurisdiction over FLSA Claims Against the Government Without Regard to the Amount in Controversy

The basis for district court jurisdiction over FLSA claims against the government is straightforward. To proceed in district court, an FLSA plaintiff must identify both a waiver of sovereign immunity and a grant of subject-matter jurisdiction. As noted, the FLSA plainly waives sovereign immunity by authorizing suit against the federal government. *See supra* p. 10. Once sovereign immunity is waived, 28 U.S.C. § 1331 grants district courts federal-question jurisdiction over FLSA claims as "civil actions arising under the . . . laws . . . of the

15

United States." 28 U.S.C. § 1331; *cf. Lightfoot*, 137 S. Ct. at 558-59, 564 (stating that statute authorizing Fannie Mae "to sue and to be sued . . . in any court of competent jurisdiction, State or Federal" permits suit under federal-question and diversity jurisdiction (quotation marks omitted)).   Neither *Abbey* nor the district court offer any convincing reason why federal-question jurisdiction does not apply. And because the FLSA makes forum proper in "any Federal or State court of competent jurisdiction," 29 U.S.C. § 216(b), district courts are a proper forum for such claims.

This analysis does not turn on whether *Bormes* precludes Tucker Act jurisdiction over the same claims or whether the Court of Federal Claims can instead exercise concurrent jurisdiction.  As explained, nothing in the FLSA requires use of the Tucker Act, *see supra* p. 11; indeed, the FLSA's use of the expansive phrase "*any* Federal or State court of competent jurisdiction" suggests that even if Tucker Act jurisdiction existed, that jurisdiction would not be exclusive.  29 U.S.C. § 216(b) (emphasis added).  And as discussed below, nothing in the Tucker Act suggests that such jurisdiction, if it exists, is exclusive.

**B.     Even if Tucker Act Jurisdiction Also Applies to FLSA Claims, that Jurisdiction Is Not Exclusive**

Pre-*Bormes* circuit court decisions addressing this question often wrongly presumed that, if Tucker Act jurisdiction applied, that jurisdiction must be exclusive.  *See, e.g.*, *Graham v. Henegar*, 640 F.2d 732, 734 (5th Cir. Unit A Mar.

1981).  The Supreme Court explained the fallacy of that reasoning in *Bowen v.*

*Massachusetts*, 487 U.S. 879 (1988):

> It is often assumed that the Claims Court has exclusive jurisdiction of
> Tucker Act claims for more than $10,000. ..... That assumption is not
> based on any language in the Tucker Act granting such exclusive
> jurisdiction to the Claims Court.  Rather, that court's jurisdiction is
> "exclusive" only to the extent that Congress has not granted any other
> court authority to hear the claims that may be decided by the Claims
> Court.

*Id.* at 910 n.48 (citation omitted); *see also Van Drasek v. Lehman*, 762 F.2d 1065,

1071 n.10 (D.C. Cir. 1985); *Ferguson v. Union Nat'l Bank of Clarksburg*, 126 F.2d

753, 756-57 (4th Cir. 1942) ("[T]he jurisdiction of a United States District Court to

entertain a suit against governmental agencies and corporations is not limited by

the provisions of the Tucker Act.").

The misconception that Tucker Act jurisdiction must be exclusive may result

from the fact that "there is rarely any statute available that waives sovereign

immunity for suits in the district court, other than the Tucker Act with its $10,000

limit." *Van Drasek*, 762 F.2d at 1071 n.10 (quotation marks omitted).  Absent

another waiver, "[t]he Tucker Act's jurisdictional grant, and accompanying

immunity waiver, suppl[y] the missing ingredient for an action against the United

States." *Bormes*, 568 U.S. at 12.  Thus, as a practical matter, jurisdiction over

many types of claims against the government lies only under the Tucker Act.  But

when a separate waiver of immunity exists, plaintiffs may rely on other grants of

jurisdiction. *See C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114,

119 (2d Cir. 1990) ("In other words, the Tucker Act provides merely one limited

waiver of sovereign immunity     Since we have held that the district court has

§ 1331 jurisdiction over Sanders' claim, however, it may be asserted in the district

court provided there is an independent waiver of sovereign immunity outside of the

Tucker Act."); *see also Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127,

1130 (10th Cir. 2011) ("If there is an independent source of subject-matter

jurisdiction over a claim against the United States, and some waiver of sovereign

immunity other than the Tucker Act, a plaintiff is free to proceed in district

court.").  In this case, the FLSA provides a separate waiver of immunity that

permits resort to federal-question jurisdiction even if Tucker Act jurisdiction also

applies.

    *Bormes* makes it untenable to maintain that Tucker Act jurisdiction over

FLSA claims—assuming it exists—necessarily precludes federal-question

jurisdiction over the same claims.  *Bormes* rejected the view that the Tucker Act is

a preferred jurisdictional basis for suits against the government, holding that it

instead serves a "gap-filling role" by "suppl[ying] the missing ingredient for an

action against the United States for the breach of monetary obligations not

otherwise judicially enforceable." *Bormes*, 568 U.S. at 12-13.  In contrast, 28

U.S.C. § 1331 provides a "general" and "'broadly phrased'" grant of jurisdiction,

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 810 (1986), that in this case leaves no gap for the Tucker Act to fill. It would be exceedingly odd to interpret the "gap-filling" Tucker Act as displacing "general" federal-question jurisdiction.

At least one court has held that Tucker Act jurisdiction to hear FLSA claims must be exclusive because the more specific jurisdictional provision should prevail over the more general grant. *See Parker v. King*, 935 F.2d 1174, 1178 (11th Cir. 1991). However, the Supreme Court has held that this type of reasoning has limited applicability to 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 378 (2012) (rejecting argument that "a later, more specific [grant of jurisdiction], displaces § 1331, an earlier, more general prescription"). As the Court warned, "Section 1331 . . . is not swept away so easily." *Id.* "[W]hen federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331. That principle endures unless Congress divests federal courts of their § 1331 adjudicatory authority." *Id.* at 378-79. Such divestment "should be found no more readily than 'divestmen[t] of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction,'" and requires that Congress do so "expressly or by fair implication."

*Id.* at 379. For the reasons described above, nothing in the FLSA or the Tucker Act

suggests that Congress has displaced federal-question jurisdiction in district court.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's

holding that it lacked jurisdiction over plaintiff's official-capacity claim under the

Equal Pay Act, and remand to the district court for further proceedings.

Respectfully submitted,

BRIAN M. BOYNTON
   *Acting Assistant Attorney General*
MICHAEL S. RAAB

s/ Weili J. Shaw
WEILI J. SHAW
   *(202) 514-1371*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7240*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., NW*
   *Washington, DC 20530*

AUGUST 2021

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate

Procedure 35(b)(2) and 40(b) because it contains 3,890 words.  This brief also

complies with the typeface and type-style requirements of Federal Rule of

Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word

2013 in Times New Roman 14-point font, a proportionally spaced typeface.

s/ Weili J. Shaw
WEILI J. SHAW

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

The unrepresented Plaintiff seeks a Federal Circuit reversal of District Court's erroneous 12(b)(6) dismissal of her case, and/or a one-time opportunity upon remand to District Court, to amend her Equal Pay Act complaint to cure defects. Most recently, on July 12, 2022, Ms. Stein moved District Court (Dkt. No. 82) pursuant to Fed. R. Civ. Proc. 59(e) and/or 60(b), to alter or amend its erroneous and unjust 12(b)(6) dismissal (Dkt. No. 78) and/or grant her a one-time opportunity pursuant to Fed. R. Civ. Proc. 15(a)(2) *Other Amendments,* to amend her EPA complaint based on new information unavailable to her after she filed her original complaint in 2018.

District Court's 12(b)(6) dismissal of Ms. Stein's wage discrimination claim "clearly establish[es] a manifest error of law" under Rule 59(e), as follows:

> "Further, even if this court had subject-matter jurisdiction, it would dismiss Plaintiff's official capacity EPA claim pursuant to Fed. R. Civ. P. 12(b)(6)." (Dkt. No. 78, p. 3 ¶ 4)

> "Beyond restating the statutory requirements for an EPA claim, Plaintiff has alleged only that despite their different credentials, nurse practitioners and physician's assistants are both considered "mid-level practitioners." She has not alleged any other facts about the specific jobs performed by the two male employees and how the requirements and conditions of their jobs compared to Plaintiff's job. Without such factual allegations, the court cannot reasonably infer that Plaintiff and the two male employees had similar working conditions and performed jobs requiring equal skill, effort, and responsibility." (Dkt. No. 78, p. 4 ¶ 1)

To the contrary, Plaintiff's complaint alleges plausible non-conclusory facts necessary for Defendants and the Court to identify the "skill, effort… responsibility," and "working conditions" that she contends define the "equal work" forming the nucleus of her EPA claim. She has sufficiently provided detail to "give . . . fair notice of what [her] . . . claim is and the grounds upon which it

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

   Ms. Stein's complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556, 570; *Erickson*, 551 U.S. at 93. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion under Rule 12(b)(6), the court "construe[s] the complaint liberally, grant[ing] plaintiff[ ] the benefit of all inferences that can [reasonably] be derived from the facts alleged." *Sickle v. Torres Advanced Enterprise Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002))

   In the instant case, the federal employee was deprived of both the benefit of her inferences and the benefit of her pro se status.  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must <u>only</u> contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); accord *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

   In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Supreme Court held that an employment discrimination complaint need not set forth "specific facts establishing a prima facie case of discrimination" to survive a motion to dismiss and, instead, was subject only to the minimal

## Stein Opposition to 12(b)(6) Dismissal, Attachment B

standard required by Federal Rule of Civil Procedure 8, that a complaint provide

" 'a short and plain statement of the claim showing that the pleader is entitled to

relief,' " id. at 508, 122 S.Ct. 992 (quoting Fed. R. Civ. P. 8(a)(2)).

In "retiring" *Conley*, [768 F.3d 254] *Twombly* reaffirmed *Swierkiewicz*. See

*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228 n. 10 (2d Cir.2014). However, it did

so only insofar as *Swierkiewicz* "did not change the law of pleading, but simply

re- emphasized that the use [by this Court of a]… heightened pleading standard

for [discrimination] cases was contrary to the Federal Rules' structure of liberal

pleading requirements." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

*Twombly's* endorsement of *Swierkiewicz* mandates that *Swierkiewicz 's*

rejection of a heightened pleading standard in discrimination cases remains valid.

*See Equal Emp't Opportunity Comm'n v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247

(2nd Cir. 2014) *Rodriguez–Reyes Molina–Rodriguez*, 711 F.3d 49, 54 & n. 3 (1st

Cir.2013) (holding that *Swierkiewicz 's* "discussion of the disconnect between the

prima facie case and the rules of pleading" remains "good law" after *Twombly* and

*Iqbal*).

When asserting an Equal Pay Act complaint, a plaintiff need not  allege

facts  establishing  each  element  of  her  prima  facie  case  of  wage  discrimination

to survive a motion to dismiss, see *Swierkiewicz*, 534 U.S. at 510, 122 S.Ct. 992

(noting that the prima facie case requirement is an evidentiary standard). Here,

Ms. Stein asserts nonconclusory factual matter sufficient to "nudge [her] claims'...

'across the line from conceivable to plausible'" to proceed, *Iqbal*, 556 U.S. at 680,

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

Moreover, the Plaintiff asserts she previously attached her September 23, 2019 Opposition (Dkt. No. 28) and Exhibit (Dkt. No. 28-1) allegations (below) to her complaint that should be considered part of her complaint because they are expressly linked to a document (the authenticity of which is not challenged) that effectively merges into the pleadings for the instant 12(b)(6) review. *Trans- Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998), as follows:

On November 21 , 2018, Director Collins emailed Ms. Stein, "Kathy - thanks for the email. I will discuss with Chief of Staff (Dr. Kupferschmid] next week as he has oversight and responsibility for the hiring of clinical providers" (Dkt. No. 28-1, Opposition Exhibit 3)

On December 5, 2018, Director Collins emailed Ms. Stein, "We are conducting an analysis of PA salaries. Once I get recommendations for a decision - we will let you and all of your colleagues know." (Dkt. No. 28-1, Opposition Exhibit 6)

Dr. Kupferschmid admitted VACWM mid-level (PA and NP) practitioners perform "substantially equal [mid-level practitioner] work on jobs requiring equal skill, effort, and responsibility ... under similar working conditions" when he emailed Ms. Stein his list of comparative base salaries for each male and female PA/NP mid-level practitioner." (Dkt. No. 28-1, Opposition, Exh. 7)

The Agency has repeatedly admitted that PA and NP positions at Appellant's Leeds, Massachusetts VA are similarly fungible or switchable, as explained by the Sixth Circuit in *Beck Wilson v. Principi*, 441 F.3d 353, 359 60 (6th Cir. 2006): "The district court concluded that plaintiffs had established a prima facie case of wage discrimination in violation of the EPA because they presented sufficient evidence such that a reasonable jury could conclude that the positions of NP and PA were fungible at the Cleveland VAMC." *Id.* at 360 We agree with the Court of Federal Claims that evidence that the positions being compared are fungible can support a prima facie case under the EPA. *Allison v. U.S.,* 39 Fed. Cl. 471, 475 (Fed.Cl.1997) (finding that plaintiffs had established a prima facie case because the… Chief NP for one section had authored a memo to the VA's Chief of Staff stating that the two groups had similar responsibilities). Although the VA repeatedly asserts in its brief that the positions at the Cleveland VAMC are not substantially equal, there is undisputed evidence in the record that the defendant considers the positions to be fungible. *Id. Beck Wilson* 360-361 *See also Allison,*

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

39 Fed. Cl. at 473 (holding that a group of "predominantly female" NPs at the Portland, Oregon VA produced evidence that they performed substantially equal work as the "predominantly male" PAs for less pay in violation of the EPA) *Id. Beck Wilson* at 362  (Dkt. No. 28 Opp., pp. 13 - 14)

Similarly, as evidenced by Ms. Stein's VA "Scope of Practice" (Dkt. No. 28-1, Exhibit 15) approved and signed by VA Director Collins, Defendant Collins admits the [PA and VA] positions are fungible. (Dkt. No. 28 Opp., p. 14)

To further augment Plaintiff's claim, Ms. Stein provided almost identical "VA Central Western MA… Job Responsibilities" for Nurse Practitioners (Dkt. No. 28-1, Exhibit 16) and Physician Assistants (Dkt. No. 28-1, Exhibit 17). Under "Responsibilities" for Physician Assistants, the Job Announcement (Dkt. No. 28-1, Exhibit 17) notes, "If you are a Physician Assistant please apply under this vacancy. If you are a Nurse Practitioner please apply under announcement # 10338539" (Dkt. No. 28-1, Exhibit 16). (Dkt. No. 28 Opposition, p. 14)

Additionally, Ms. Stein provides a relevant 2016 study, "PA and NP productivity in the Veterans Health Administration" (Dkt. No. 28-1, Exhibit 18) in support of her argument that the "similar" work performed individually by PA Stein and her two male NP comparators need not be identical to be similar. *See Beck Wilson v. Principi*, 441 F.3d 353, 359  60 (6th Cir. 2006). *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874 (6th Cir., 2013) (Dkt. No. 28 Opposition+, p. 14)

In the instant case, Ms. Stein established a prima facie claim of wage discrimination under the EPA/FLSA simply by showing two male mid-level practitioners, Mr. Sullivan and Mr. Olmedo, were paid more than Ms. Stein, "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C § 206(d)  The Court's repeated denial over a 4 year period of a fair and meaningful "pro se leniency" opportunity for the unrepresented litigant to assert and/or amend her Equal Pay Act claims "clearly establish[es] a manifest error of law" under Rule 59(e). *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir.1992); see also *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n. 2 (1st Cir.2005).

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

Alternatively, Ms. Stein sought relief under Rule 60(b), which provides that "the court may relieve a party . . . from a final judgment, order, or proceeding," for, as relevant here, "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(2), (6). Relief under Rule 60(b) that is like the instant case, "extraordinary in nature".

The Court's erroneous 12(b)(6) dismissal ( presumably without prejudice) is so "extraordinary in nature" that it compels both reversal and other relief requested under Rule 60(b).  It would be unjust and unreasonable to deny the Appellant a one- time opportunity, pursuant to Fed. R. Civ. Proc. 15(a)(2) *Other Amendments,* to amend her Equal Pay Act complaint based on new information unavailable to her after she filed her original complaint in 2018.

Ms. Stein has sufficiently pled a violation of the Equal Pay Act. "At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)).

While the line dividing an EPA plaintiff's prima facie case from a defendant's affirmative defense may at times be hazy, applying a heightened pleaded requirement for the pro se litigant would wholly eviscerate the distinction between an EPA plaintiff's plausibly pled *prima facie* case and her employer's stated affirmative defense. This would far exceed anything required by *Twombly*, 550 U.S. at 547, and *Iqbal*, 556 U.S. at 678; and it would erect an almost unsurmountable hurdle to stating a claim, given the limited access that EPA

**Stein Opposition to 12(b)(6) Dismissal, Attachment B**

plaintiffs have (before discovery) to information relating to the day-to-day pay and compensation of their comparators. For present purposes, Ms. Stein's complaint asserts sufficient non- conclusory facts necessary for Defendant and the Court to identify the "skill, effort… responsibility," and "working conditions" that she contends define the "equal work" forming the nucleus of her EPA claim. Ms. Stein has sufficiently described the common duties and qualifications of the relevant comparator group with sufficient detail to "give . . . fair notice of what [her] . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555

Emphatically, the EPA concerns equal pay for equal work. Although a discrimination complaint need not allege facts "establishing each element of a prima facie case of discrimination" at the pleading stage, Ms. Stein provides "sufficient factual matter," from which a reasonable inference can be drawn that the relevant employees' job content was "substantially equal" Whereas, "detailed factual allegations" are not necessary to withstand a 12(b)(6) motion, Ms. Stein has provided the "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555.

For the above reasons, Ms. Stein seeks a Federal Circuit reversal of District Court's erroneous 12(b)(6) and 12(b)(1) dismissals of her Equal Pay Act complaint.

Respectfully submitted on January 9, 2023,

/s/ *Kathlyn M. Stein*
Kathlyn M. Stein, Pro se

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KATHLYN STEIN, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Civil Action No. 18-30201-MGM |
| DUANE B. GILL, Director, VA Central Western | * | |
| MA Health Care System, in his official capacity,[1] | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 70)

July 1, 2022

MASTROIANNI, U.S.D.J.

In December of 2018, Plaintiff, Kathlyn Stein, a physician's assistant employed by VA

Central Western Massachusetts Health Care System, filed a complaint in which she asserted four

claims, including a claim that, while acting in his official capacity, Defendant, the Director of the VA

Central Western MA Health Care System, violated the Equal Pay Act (EPA), 29 U.S.C. § 206 *et seq.*,

by paying her less than male employees who held "essentially the same job." (Compl., Dkt. No. 1.)

This court granted a motion to dismiss all claims. As to Plaintiff's official-capacity EPA claim, the

court agreed with the government's argument that the court lacked subject-matter jurisdiction to

hear the claim. In the absence of binding First Circuit precedent addressing the court's subject-

---

[1] The First Circuit vacated and remanded for further proceedings only that portion of this court's ruling related to Plaintiff's official capacity Equal Pay Act claim. That claim was originally asserted against John Collins. Since the complaint was filed, Collins has retired and Duane B. Gill now serves as the Director of the VA Central Western Massachusetts Healthcare System. Gill is automatically substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d).

matter jurisdiction, this court followed the approach taken by the Court of Federal Claims in *Abbey v. United States*, 745 F.3d 1363 (Fed. Cir. 2014).

Plaintiff appealed and, upon initial consideration, the First Circuit affirmed the dismissal of all claims. (First Cir. Judg't, June 4, 2021, Dkt. No. 67.) Plaintiff then filed a petition for rehearing as to her official-capacity EPA claim. In response, Defendant informed the First Circuit that it had changed its position and now agreed with Plaintiff that district courts have subject-matter jurisdiction over official-capacity EPA claims. (Resp. to Pet. For Reh'g En Banc, First Cir. Dkt. No. 20-1906, 5-6). The government had also advanced the new position regarding subject matter jurisdiction in an appeal pending before the Federal Circuit. (*Id.*) The First Circuit vacated this court's dismissal of the official-capacity EPA claim and remanded for further proceedings, but "expressed no opinion as to the appropriate outcome on remand, including as to any implicated jurisdictional issue or the merits." (First Cir. Judg't, Oct. 12, 2021, Dkt. No. 68 at 2.)

On December 13, 2021, Defendant filed the pending motion to dismiss the official-capacity EPA claim. Defendant did not address the question of subject-matter jurisdiction and argued only that dismissal was warranted on substantive grounds because pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff failed to state a claim upon which relief can be granted. Specifically, Defendant argued Plaintiff had not alleged sufficient facts to state a plausible EPA claim and sought relief that cannot be granted under the EPA. Plaintiff opposed dismissal citing the broad remedial purpose of the EPA and explaining why she believed her allegations were sufficient to state a plausible claim under the EPA. Like Defendant, Plaintiff did not address the question of this court's subject-matter jurisdiction.

On December 14, 2021, the Federal Circuit reiterated its position in *Abbey*, affirming the transfer of an EPA claim against the Department of Veterans Affairs from District Court to the U.S.

Court of Federal Claims because the District Court lacked subject-matter jurisdiction over the claim pursuant to the Little Tucker Act. *Metzinger v. Dep't of Veterans Aff.*, 20 F.4th 778 (Fed. Cir. 2021).

Federal courts are courts of limited jurisdiction and "[t]he existence of subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). This court has an independent obligation to "notice, and act upon, defects in its subject matter jurisdiction sua sponte." *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 (1st Cir. 2011). The First Circuit's decision vacating a portion of this court's earlier order and remanding the case did not include a ruling of the issue of subject-matter jurisdiction. Instead, the First Circuit granted Defendant an opportunity to present its revised position and left it to this court to again "determine in the first instance whether there is subject-matter jurisdiction to hear [Plaintiff's] official-capacity EPA claim." (First Cir. Judg't, Oct. 12, 2021 at 2.)

However, Defendant has elected not to present its new position to this court. Moreover, the Federal Circuit precedent this court previously relied upon to find it lacked subject-matter jurisdiction has been reinforced by its decision in *Metzinger*. In the absence of contrary guidance from the First Circuit, this court again finds it lacks subject-matter jurisdiction over Plaintiff's official-capacity EPA claim. Plaintiff has not sought a transfer of this case to the Court of Federal Claims. The court, therefore, will dismiss this pending complaint for lack of subject-matter jurisdiction.

Further, even if this court had subject-matter jurisdiction, it would dismiss Plaintiff's official-capacity EPA claim pursuant to Fed. R. Civ. P. 12(b)(6). When assessing the sufficiency of a complaint under Rule 12(b)(6), this court must "disregard all conclusory allegations that merely parrot the relevant legal standard," and then consider "whether the remaining factual allegations state a plausible, rather than merely a possible," claim. *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). To prevail on a claim under the EPA, the plaintiff must show that "the employer

3

paid different wages to specific employees of different sexes for jobs performed under similar working conditions and requiring equal skill, effort, and responsibility." *Ingram v. Brink's, Inc.,* 414 F.3d 222, 232 (1st Cir. 2005). In her Complaint, Plaintiff identified two male employees of the VA Central Western Health Care System, both nurse practitioners, who were paid more than her "for performing a job of equal skill, effort and responsibility under similar working conditions." (Compl., Dkt. No. 1, ¶¶ 10-15.) Beyond restating the statutory requirements for an EPA claim, Plaintiff has alleged only that despite their different credentials, nurse practitioners and physician's assistants are both considered "mid-level practitioners." She has not alleged any other facts about the specific jobs performed by the two male employees and how the requirements and conditions of their jobs compared to Plaintiff's job. Without such factual allegations, the court cannot reasonably infer that Plaintiff and the two male employees had similar working conditions and performed jobs requiring equal skill, effort, and responsibility. *Woods v. Covidien LP*, Civ. No. 15-cv-30094-MGM, 2016 WL 2733102, * 7 (D. Mass. 2016).

For the above reasons, the court grants Defendant's Motion to Dismiss (Dkt. No. 70). This case may now be closed.

It is so Ordered.


 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge